72613. GWINNETT COUNTY v. GRANT et al.
(352 SE2d 391)

BENHAM, Judge.

Appellant instituted condemnation proceedings involving land owned by appellee Grant. OCGA § 22-1-102. The trial court appointed a special master who awarded appellee $350,093 on April 18, 1984, and who filed the award that same day. The award was made the judgment of the court on April 25, 1984, and appellee filed an appeal from the award to the trial court on May 2, 1984. On December 4, 1985, appellant filed a motion to dismiss the condemnee's appeal on the ground that it was not timely filed. See OCGA § 22-2-112. The trial court denied the motion and a jury trial was had on the issue of just and adequate compensation, resulting in a verdict and judgment of $542,879.50 compensation. On appeal, the county's sole enumeration of error is the denial of its motion to dismiss the condemnee's appeal of the special master's award.

OCGA § 22-2-112 provides: "In case any party is dissatisfied with the amount of the award [of the special master], he may, within ten days after the award is filed, enter in writing an appeal from the award to the superior court of the county where the award is filed . . . ." It is undisputed that the condemnee's May 2 appeal was not filed within ten days after the special master's award was filed on April 18. See *Howell Enterprises v. Atlanta*, 123 Ga. App. 767 (1) (182 SE2d 331) (1971). Relying on *Hodges v. South Ga. &c. Gas Co.*, 111 Ga. App. 180 (2) (141 SE2d 182) (1965), appellee contends, and the trial court held, that a demand for a jury trial made by appellee before the special master's award existed was sufficient to allow jury determination of the issue of just and adequate compensation. In so doing, the trial court implicitly equated a demand for a jury trial with an appeal from the award of a special master.

In *Hodges*, the assessors' award was dated May 7 but not filed until May 9. The appeal to jury was filed on May 8, after the award was signed but before it was filed. The motion to dismiss the appeal as untimely was denied, and this court upheld that denial. *Hodges*, however, is distinguishable from the case at bar. In *Hodges*, an award was in existence when the appeal was filed; in the case at bar, the demand for a jury trial preceded the special master's award by two weeks. In point of fact, the hearing before the special master had not yet been held when appellee sought a jury trial of the issue the special master was to decide initially. The factor which distinguishes *Hodges* from the case at bar, the existence of an award "rendered by a tribu-

nal which is competent to fix the rights and liabilities of the parties to the proceedings with reference to the matters and things involved" (id. at 180), mandates differing results in *Hodges* and the present case. An appeal to jury under OCGA § 22-2-112 is timely even if filed before the special master's award is filed if the award of the special master is in existence and the rights of the parties fixed, thus ensuring there is something from which to appeal. Id. at 181. Appellee's appeal to jury filed May 2 was untimely because it was not filed within ten days of the filing of the special master's award, and his demand for jury trial, filed before a special master award existed, did not qualify as a timely appeal to jury. Inasmuch as no appeal to jury was filed after the award was made and within ten days after the award was filed, the motion to dismiss the appeal should have been granted. OCGA § 22-2-112; *Hodges*, supra. See also *Wisenbaker v. Lowndes County*, 175 Ga. App. 825 (335 SE2d 1) (1985).

*Judgment reversed. Banke, C. J., McMurray, P. J., Birdsong, P. J., and Carley, J., concur. Deen, P. J., Pope, and Beasley, JJ., dissent. Sognier, J., dissents in the judgment only.*

BEASLEY, Judge, dissenting.

In reconsidering this case on the motion for rehearing, I am convinced that my original vote was wrong and that the judgment of the trial court should be affirmed.

The case of *Hodges v. South Ga. &c. Gas Co.*, 111 Ga. App. 180 (2) (141 SE2d 182) (1965) does not control so as to compel an opposite result here. The difference in facts simply means that we must search further. However, *Hodges* helps point the way. The Court there ruled that filing the appeal before the assessors' award was filed but after it had been stated did not invalidate the appeal under the statutory language which allows appeals to be filed "within 10 days from the time the award is filed." The four examples cited from other courts all involve filings *before* the event from which the time for filing was to be measured. This case is like those, in this respect.

The Court in *Hodges* based its rationale on its construction of the statute, derived from a logical determination of the legislature's intent. That is precisely the manner in which we must approach the statute's meaning as it applies to this case. OCGA § 1-3-1 (a) provides: "In all interpretations of statutes, the courts shall look diligently to the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy."

This Court in *Hodges* found that the legislature concerned itself with the time *after which* an appeal may not be filed, and that it did

not address the subject of prematurely filed appeals.[1] "No reason suggests itself why the fact that one was filed before the other in any way disarranged the orderly processes of Law, . . . ," said the Court, and "No rational purpose can be served by a slavish devotion to grammar which has the effect of reaching a conclusion obviously not intended, . . ." Id. at 181.[2]

If the intent of the legislature is to move things along and not allow the citizen to sleep on his rights when the government acts, then that was surely accomplished here by the premature filing. What does such a filing do? It puts the parties and the court on notice, promptly, that the property owners want a jury to decide the amount of compensation which the government should pay.

Here, a grave injustice results when the government takes the property and pays nearly $200,000 less than a jury actually finds to be just and adequate compensation. And this results although all along the condemnees insisted that they wanted a jury to determine the amount, notifying the condemnor, the court, the special master, and the general public. They did this right from the start, by clearly stating it in the answer, which was filed with the court, and by actually *praying* for it.

The special master acknowledged it, and alerted the court, in his award, by recommending to the court that the property be condemned upon payment of the amount he set for payment into the court's registry, "subject to the demands of the condemnee[s]." The property owners did not withdraw that jury demand of the court nor that prayer to the court after the special master's award, and the case was set for jury trial. So even the court, in its case management practices, considered these demands and prayer to be an appeal from the special master's award. The clerk, too, regarded it as such, as demonstrated by the index listing of the "jury demand" as accompanying the answer.

The property owners then confirmed this demand, which everyone knew of from the start, by filing a formal "appeal to jury." However, if this were to be considered the only written "entry" called for by the statute, it was two days late, the 28th being on a Saturday and condemnee having until the 30th, and it not having been actually filed with the clerk until May 2. It was in fact signed and served on the

---

[1] The court's caveat that the award must be in existence is a gratuitous judicial exception, not one necessary for the court's construction of the statute as it applied to that case, and not one which follows the rationale that the legislature was concerned only with *delayed* appeals. It is inconsistent also with the four cases cited as authority, for as pointed out earlier, they involved filings before the event itself, not simply filings before the event was judicially recognized.

[2] The other case cited by the majority, *Wisenbaker v. Lowndes County*, 175 Ga. App. 825 (335 SE2d 1) (1985), does not involve this issue but merely makes a parenthetical aside.

30th, so to this degree it was timely "entered." The condemnees obviously thought it was timely, as they mistakenly believed the award had been filed on April 24 rather than April 18, which would have given them until May 4.

This was of no concern to the government until near the trial date, when it sought dismissal not because it was harmed in any way but because of the technically untimely filing of a document telling it and the court something they already knew by way of the premature jury demand.[3]

Thus, what I perceive to be the two components of the statute's purpose, i.e., notice and a cut-off time, were served. As in *Steele v. Cincinnati Ins. Co.*, 252 Ga. 58, 59 (311 SE2d 470) (1984), a case involving construction of the Appellate Practice Act, I would conclude that the procedural statute "is better interpreted to prevent loss of the right of appeal than to facilitate loss." Our Court, too, took a liberal view towards the premature filing of a notice of appeal, in its application of the Appellate Practice Act: "[T]he modern trend is toward relaxation of hypertechnical constructions which prevent appellate courts from reaching the merits of an appeal when notice came too early rather than too late." *Kenerly v. Yancey*, 144 Ga. App. 295, 296 (1) (241 SE2d 28) (1977).

Furthermore, OCGA § 1-3-1 (c) provides: "A substantial compliance with any statutory requirement . . . shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law." This, another principle of statutory construction, was applied recently in *Lumpkin v. State*, 255 Ga. 363, 364 (1) (338 SE2d 431) (1986). As in that case, so here: "there is no showing of harm to [condemnor], and no error." Id. at 364. We have here a verdict, and according to OCGA § 9-12-4, verdicts "shall not be avoided unless from necessity."

In conformity with what is said in *Hodges*, the purpose of the statute is to promptly notify the condemnor and the court of the dissatisfaction with the special master's award and to get the matter of amount promptly resolved by a jury so that the public's obligation with the respect to the taking will not hang on indefinitely and, foremost, so that the property owner's constitutional right to "just and adequate compensation," Ga. Const. 1983, Art. I, Sec. III, Par. I (a), will be afforded. Prompt payment is of constitutional concern. Id. at subsections (b) and (c). Thus the timing aspect of the procedural statute is as much, if not more, a protection of the condemnee's rights as it is of the government's rights. We should not construe it to have an

---

[3] In this regard it can be considered timely under *Hodges*, because as in *Hodges* the action was documented but simply not filed, and all the parties including the court knew that condemnee wanted a jury trial.

opposite effect.

We should consider the spirit of the statute's purpose in applying it, making sure that the real intent of the legislature is accomplished, and taking into account constitutional principles when they are relevant. The concept has been recently voiced several times: "It is not that the magic words are spoken, but what is said and done irrespective of the magic words." *Messex v. Lynch*, 255 Ga. 208, 210 (336 SE2d 755) (1985). "We have long ago departed that realm of law where runes and sigils supplant reason and substance." *Tuggle v. Tuggle*, 251 Ga. 845, 846 (2) (310 SE2d 224) (1984).

The case having gone the full route below, no interlocutory appeal having been sought by the government from the order denying the motion to dismiss, and with the government neither claiming harm nor the record suggesting any, I would affirm the trial court. Even if it was wrong, which I do not conclude, error must be harmful if it is to be reversible. *Wells v. State*, 177 Ga. App. 419, 421 (339 SE2d 392) (1986). As emphatically stated in *Edwards v. State*, 176 Ga. App. 369, 371 (337 SE2d 27) (1985): "Even assuming, for the purpose of argument only, that is was error . . . the burden is on a party claiming error not only to show error, but error which injured him, and unless the error results in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right, an appellate court will not reverse. [Cit.]"

I am authorized to state that Presiding Judge Deen and Judge Pope join in this dissent.

DECIDED SEPTEMBER 17, 1986 —
REHEARING DENIED DECEMBER 18, 1986 —

*G. Gibson Dean II, Philip T. Schley, Jr.*, for appellant.
*G. Hughel Harrison*, for appellees.